(34 South. 138.)

No. 14,202.

FINK v. CITY OF NEW ORLEANS.

(March 30, 1903.)

MUNICIPAL CORPORATIONS—DAMAGE BY MOBS —EVIDENCE.

1. In dealing with claims against municipal corporations for damages done to property by mobs, it is the duty of the courts, in the interest of the taxpayers (who, though as innocent of wrong as the party injured, must pay the bill) to require that they be established with at least reasonable certainty.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by Jacob Fink against the city of New Orleans. Judgment for plaintiff, and defendant appeals. Affirmed.

Frank B. Thomas, Asst. City Atty., for appellant. Charles Rosen, for appellee.

MONROE, J. Plaintiff sues to recover from the city of New Orleans the sum of $4,404.25, as the amount of his loss from the looting, by a mob, of the show window of his store. The answer of the defendant is a general denial. There was judgment in the district court in favor of the plaintiff for $1,189.85, from which the defendant has appealed, and the defendant answers the appeal, and prays that the amount awarded be increased to that demanded. The facts disclosed by the evidence are as follows:

Prior to and upon July 25, 1900, the plaintiff was engaged at Nos. 405 and 407 South Rampart street, in this city, in business as a pawnbroker and dealer in secondhand goods, such as clothing, hats, shoes, guns, pistols, watches, rings, scarf pins, musical instruments, billiard balls, etc., and he also bought and sold some new goods, his principal customers being negro roustabouts and screwmen. He had two clerks—Flashner and Selzer. Flashner opened and swept out the store in the mornings, waited on the customers in the clothing department, without, however, fixing prices, and, in the evenings, put up the shutters on the two show windows, after which he went home. Selzer was particularly charged with the duty of taking out from the safe, in the mornings, the more valuable goods, such as pistols, watches, rings, pins,

etc., placing them in one of the show windows, and returning them to the safe in the evenings. He also waited on customers, though it is to be inferred that the plaintiff was usually on hand, and reserved to himself the prerogative of fixing the prices at which the goods were to be sold. It was Flashner's custom to put up the shutters at about quarter to 9 o'clock, and it was Selzer's custom, within a few minutes thereafter, to remove the articles which have been mentioned from the show window to the safe. On the evening of the 25th of July, however, whilst Flashner discharged his function at the usual hour, Selzer did not. There was some excitement in the street, and he and the plaintiff went off to see about it, leaving the goods in the window, and leaving the establishment in charge of the plaintiff's wife and little children, with the result that a few minutes later the shutters and glass of the window were wrenched apart and smashed, and the contents carried away by a mob. The plaintiff annexes to his petition a list of the articles which he alleges were thus carried away, and he and his clerks undertake, with more or less confidence, to vouch for its correctness, the plaintiff alone giving the values. The judge a quo reached the conclusion that this list calls for considerably more than was lost, and we are of the same opinion. The plaintiff, who is unable to read or write, attempted to prove, somewhat late in the case, that Flashner kept for him a small book, in which detailed entries of his purchases, and of his receipts, as taken from his cash register, were entered; but, as that system of bookkeeping could have afforded little or no assistance, the making up of the list of over 600 articles said to have been in the window on the particular night in question must have been either a matter of pure guesswork or an effort of memory, which, if successful, would, even under more favorable conditions, have been remarkable in one man, marvelous in two, and incredible in three. The conditions were not, however, particularly favorable, since neither the plaintiff nor Flashner were in the habit of handling the articles in question, and Selzer, who did handle them, is the least positive of the three. There are, moreover, certain conflicts in the testimony of these witnesses upon other matters, which

go to show that they are not phenomenally accurate, and the inference is a fair one that they are at least as likely to be mistaken in the matter at issue as other men would be under like circumstances.

Beyond this, it seems to us improbable, considering the character of the business in which the plaintiff is engaged, the neighborhood in which that business is conducted, and the people with whom he deals, that he would keep a stock valued at over $4,000 in a single show window. And, as the judge a quo justly observes, whilst the tendency in a case of this kind is to exaggerate the claim for damages, it is the duty of the courts, in the interest of the taxpayers (who, though as innocent of wrong as the plaintiff himself, must pay the bill) to require that such claim be proved with at least reasonable certainty. This, to the extent of the amount allowed, the plaintiff has done, and, agreeably to the provisions of section 2580 of the Revised Statutes, he is entitled to recover.

The judgment appealed from is accordingly affirmed.